*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Z. Z. E. SPAIN-GREEN, Minor.

UNPUBLISHED
January 09, 2025
3:21 PM

No. 369144
St. Joseph Circuit Court
Family Division
LC No. 22-000478-NA

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

In this appeal of an order terminating parental rights, respondent-mother asks us to reverse the trial court's finding of statutory grounds to terminate her parental rights to her minor child, ZZE. Respondent-mother contends that petitioner, the Department of Health and Human Services (DHHS), did not present clear and convincing evidence for termination under MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (child will be harmed if returned to the parent), or that a preponderance of evidence showed that termination was in ZZE's best interests. We find no error in the trial court's rulings and, therefore, we affirm.

## I. BACKGROUND

The DHHS filed a petition to take ZZE into protective custody in July 2022, following a series of events that placed ZZE in imminent danger. On July 11, 2022, police arrested and jailed respondent-mother for a child support warrant involving another child and for violating a personal protection order obtained by ZZE's biological father. While she was in jail, respondent-mother left six-month-old ZZE with a friend who was involved in multiple Children's Protective Services investigations and was, therefore, unsuitable to provide proper care for the child. ZZE's father was arrested the following day on a child support warrant, but he resolved the warrant and officers released him. He then took ZZE from respondent-mother's friend and attempted to leave the state with ZZE. Police intervened and placed ZZE into protective custody. For years, ZZE's father physically, emotionally, and sexually abused respondent-mother, and he ultimately consented to the termination of his parental rights.

-1-

In this case, respondent-mother participated in services through the DHHS to work toward reunification with ZZE. She acknowledged that ZZE's father was violent in the home and she insisted that she ended her relationship with him. But, throughout the case, evidence showed that ZZE's father drove respondent-mother to parenting-time visits, lived in respondent-mother's home, communicated with respondent-mother frequently while in jail on an arson charge, and impregnated respondent-mother again. Respondent-mother denied these facts and withheld information from caseworkers about her ongoing relationship with ZZE's father. Respondent-mother also grew hostile toward case workers and one of her therapists. That therapist had to terminate therapy with respondent-mother, which was the first time the therapist ever stopped seeing a patient during her 17-year career. The trial court found that respondent-mother demonstrated that she did not benefit from services to help her overcome the barrier to reunification with ZZE—her toxic relationship with her abusive partner, ZZE's biological father—and that she repeatedly lied about that relationship. The trial court ultimately ruled that clear and convincing evidence established statutory grounds to terminate her parental rights and that termination was in ZZE's best interests.

## II. GROUNDS FOR TERMINATION

Respondent-mother argues that the trial court clearly erred by finding clear and convincing evidence to terminate her parental rights under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). We disagree.

### A. STANDARDS OF REVIEW

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). "We review for clear error the trial court's decision whether grounds for termination have been proven by clear and convincing evidence." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made . . . ." *Id*. (quotation marks and citation omitted). "[O]nce a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We defer "to the special ability of the trial court to judge the credibility of witnesses." *In re Pederson*, 331 Mich App at 472 (quotation marks and citation omitted).

### B. LEGAL PRINCIPLES

Under MCL 712A.19b(3)(g), a trial court may terminate parental rights when "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

"[A] parent's failure to substantially comply with court-ordered treatment plans is indicative of neglect." *In re BZ*, 264 Mich App 286, 300-301; 690 NW2d 505 (2004) (citation

omitted). Moreover, "[a] parent's failure to participate in *and benefit from* a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (emphasis added). A parent's history of conduct can also be utilized to assess whether there is a reasonable expectation that the parent would be able to properly care for a child in the future. See *In re Archer*, 277 Mich App 71, 76; 744 NW2d 1 (2007).

This Court has considered numerous cases in which a parent's involvement with an abusive partner continued after the DHHS provided services to overcome that barrier to reunification. In *In re White*, 303 Mich App at 706-707, the respondent actively participated in services and parenting time, and she made significant progress with most aspects of her service plan. But the respondent did not make progress with her primary barrier to reunification, which was continuing relationships with dangerous men and allowing them in her home. *Id*. at 706-708. Because of this ongoing problem, this Court upheld the trial court's finding that, despite the respondent's participation in services, she would not be able to provide proper, safe care for her children. *Id*. at 708-709, 711-713.

Similarly, in *In re Plump*, 294 Mich App 270, 273; 817 NW2d 119 (2011), the respondent's decision to maintain a relationship with her abusive partner showed that she did not benefit from services, which included counseling for domestic-violence victims. This Court made clear that a court may not terminate parental rights merely because a parent was the victim of domestic violence, but termination may occur if evidence shows that a relationship with an abusive partner was a barrier to reunification that persisted despite the parent's participation in tailored services designed to help her overcome the barrier. *Id*. at 272-273.

And, in *In re Dearmon*, 303 Mich App 684, 692; 847 NW2d 514 (2014), this Court upheld the trial court's order terminating the respondent's parental rights under MCL 712A.19b(3)(g) because the respondent continued to maintain a relationship with an abusive partner. The partner continued to live with and abuse the respondent despite a no-contact bond condition, and the respondent remained in contact with the abuser while he was incarcerated. *Id*. at 688-689, 691. During prison calls, the respondent told her abusive partner that she wanted to remain in a close relationship with him, and she became pregnant with his child during the termination case. *Id*. at 691. Also during her case, the respondent in *Dearman* denied that she was in a relationship with her abusive partner and downplayed or denied that she experienced domestic violence. *Id*. For these reasons, this Court held that statutory grounds supported the trial court's termination of the respondent's parental rights. *Id*. at 692, 700.

C. ANALYSIS

In this case, respondent-mother remained employed throughout the case and the trial court found that she had the financial ability to provide for ZZE. The trial court also acknowledged that respondent-mother complied with various services, including her completion of most of the Keeping Families Together program. Respondent-mother also attended parenting-time visits with ZZE and consistently met with her individual counselor. But the trial court found it "a huge problem" that a reputable infant-mental-health therapist terminated therapy with respondent-mother because of respondent-mother's hostility and aggression, which weighed heavily against a finding that respondent-mother complied with and benefited from services. Respondent-mother

also claimed that she benefited from domestic-violence services designed to support and empower victims, but the trial court found respondent-mother's assertion lacked credibility because she lied about, and continued her relationship with her violent, abusive partner.

This case is similar to *In re White*, 303 Mich App at 712, in which, as discussed, the respondent had a history of inviting men with criminal backgrounds into her home and continued to do so during the case, which demonstrated that she did not benefit from her service plan. Similarly, in this case, respondent-mother's history of maintaining a relationship with her abusive partner continued throughout the case, which showed that she was unlikely to change this conduct in an effort to prevent domestic violence from occurring in her home with ZZE. See *id*. Also, like the respondent in *In re Dearmon*, 303 Mich App at 691-692, 700, respondent-mother in this case maintained contact with her abuser even after he was incarcerated, and also became impregnated by him again. These reasons supported the trial court's ruling that respondent-mother would not provide proper care and custody for ZZE within a reasonable time.

Respondent-mother had over a year to address the barrier to reunification which was her relationship with her violent and abusive partner, but she did not benefit from services, and she did not overcome this barrier. Therefore, respondent-mother's compliance with services did not correct the problem because her conduct demonstrated that she failed to benefit from them. See *In re White*, 303 Mich App at 712. Thus, although she was financially able to do so, respondent-mother's ongoing relationship with her abusive partner indicated that she would not be able to provide proper care for ZZE within a reasonable time. The trial court did not clearly err in its findings, and clear and convincing evidence established grounds for termination of respondent-mother's parental rights pursuant to MCL 712A.19b(3)(g). "Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).[1]

### III. BEST INTERESTS

Respondent-mother argues that the trial court erred by finding that a preponderance of the evidence showed that termination of her parental rights was in ZZE's best interests. Again, we disagree.

A trial court considers several factors to determine whether termination is in the best interests of the child, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015) (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's wellbeing while in care, and the possibility of adoption." *In re Rippy*, 330 Mich App 350, 360-361; 948 NW2d 131 (2019) (quotation marks and citations omitted).

---

[1] We note, however, that our review of the record disclosed no clear error in the trial court's findings pursuant to MCL 7712A.19b(3)(j).

In this case, the trial court considered respondent-mother's bond with ZZE and the court acknowledged that respondent-mother regularly visited ZZE. The record reflects that respondent-mother attended parenting time visits and, although there were concerns about respondent-mother overfeeding ZZE because of his significant gastrointestinal problems, she demonstrated other basic parenting skills. But this does not outweigh other factors, including respondent-mother's ongoing relationship with a dangerous, abusive person. See *In re White*, 303 Mich App at 714. In this respect, the remaining best-interest factors established that termination was clearly in ZZE's best interests. See *id*.

As discussed, the trial court found that respondent-mother's history of domestic violence and deception about her ongoing relationship with her abusive partner established that ZZE would not be safe in respondent-mother's care. The trial court also found that ZZE became emotionally dysregulated and experienced diarrhea after parenting time visits with respondent-mother, and that his emotional and physical health improved when he did not have visits with respondent-mother.

Regarding ZZE's need for permanency and stability, the trial court considered that he was almost two years old after spending most of his life in the foster-care system. A therapist testified that ZZE urgently needed permanency and stability, and that respondent-mother could not provide it, but that the foster family was doing so. The trial court also noted that ZZE had an increased need for stability because he had a genetic disorder that would likely impact him throughout his life. ZZE was also in a pre-adoptive placement, and the trial court also found that the possibility of adoption was very high. The trial court further considered the recommendations of experts in the case, all of whom stated that termination of respondent-mother's parental rights would be in ZZE's best interests. Thus, the trial court considered numerous factors and ample record evidence in making its best-interests determination, and the court did not clearly err by finding that termination was in the best interests of ZZE.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani